UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHUAIB O'NEILL,<br><br>                Plaintiff,<br><br>  -against-<br><br>THE CITY OF NEW YORK; JOSEPH CRUZADO; KEVIN MATTHEWS; and LIEUTENANT SCHLEYER, Individually and as Members of the New York City Police Department,<br><br>                Defendants. | **COMPLAINT**<br><br>Index No. 17-cv-5762<br><br>Jury Trial Demanded |

Plaintiff SHUAIB O'NEILL ("Plaintiff" or "O'Neill"), by his attorneys, the LAW OFFICES OF JOEL B. RUDIN, P.C., respectfully alleges, upon information and belief, as follows:

## NATURE OF ACTION

1. This is an action for false arrest, malicious prosecution, and the unlawful manufacturing by police of false evidence which caused Plaintiff, SHUAIB O'NEILL, a gainfully employed young man with absolutely no criminal record, to spend three and one-half traumatic years in State Prison.

2. Remarkably, on direct appeal, the State Appellate Division, notwithstanding the jury's verdict convicting Plaintiff of felony gun possession, discredited the arresting officer, Defendant JOSEPH CRUZADO, reversed the conviction, and dismissed the indictment. The court relied on its prior decision discrediting the officer in another, highly-similar case involving the planting of a gun and falsification of "evidence." In fact, the same officer has been implicated in a total of six such cases.

3. Pursuant to 42 U.S.C. § 1983 and state law, Plaintiff is entitled to recover substantial damages for the crimes committed against him by Defendant CRUZADO and his fellow officers, and for the negligence of the New York City Police Department ("NYPD") in permitting this rogue officer to engage in his evidence-fabrication spree.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

4. This action arises under 42 U.S.C. §§ 1983 and 1988, and under the common law of the State of New York.

5. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and by the principles of pendent jurisdiction.

6. Venue, pursuant to 28 U.S.C. § 1391, is based upon where the cause of action arose.

7. This action is timely as it has been commenced within one year and ninety days of Plaintiff's state law causes of action and within three years of Plaintiff's federal causes of action.

8. On or about October 5, 2016, Plaintiff served THE CITY OF NEW YORK timely notice of the present claims pursuant to New York General Municipal Law § 50-e.

9. Plaintiff has duly complied with all conditions precedent to the commencement of this action.

## THE PARTIES

10. Plaintiff SHUAIB O'NEILL is a citizen and resident of the State of New York and of the United States, and resides in Queens, New York.

11. Defendant THE CITY OF NEW YORK ("the City") of which the County of Queens is a subdivision, is a municipal corporation of the State of New York and is a resident of the Eastern District of New York.

12. The NYPD is an agency of the City.

13. Police officers employed by the NYPD are agents and employees of the City.

14. The City is legally responsible for torts they commit within the scope of their employment.

15. Defendant JOSEPH CRUZADO, assigned Shield No. 11022 and Tax Registration No. 934706, was, at all relevant times, a police officer employed by the NYPD and acting within the scope of his employment and under color of State law.

16. Defendant KEVIN MATTHEWS, assigned Shield No. 2543, was, at all relevant times, a police officer employed by the NYPD and acting within the scope of his employment and under color of State law.

17. Defendant LIEUTENANT SCHLEYER (first name and Shield Number currently unknown) was, at all relevant times, a police officer employed by the NYPD and was acting within the scope of his employment and under color of State law.

18. Defendants CRUZADO, MATTHEWS, and SCHLEYER will be referred to herein as "the Individual Defendants."

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.   Plaintiff's Wrongful Arrest and Indictment**

19. On the evening of November 3, 2006, Plaintiff SHUAIB O'NEILL was walking down a sidewalk with his friend, Shaun Buchanan, in a residential area in Queens, New York, when he was stopped by the Individual Defendants.

20. At the time, Plaintiff had a full-time job as a dietary aide in a nursing home.

21. He had been working there for three years, since graduating from high school.

22. He had never been arrested and had no criminal record.

23. Plaintiff's friend, Mr. Buchanan, was also employed at the time, and had also been working since high school.

24. Mr. Buchanan had also never been arrested and had no criminal record.

25. The Individual Defendants stopped Plaintiff for no lawful reason.

26. Neither Plaintiff nor Mr. Buchanan, in their appearance or behavior, gave any cause for the Individual Defendants to believe they were doing anything wrong.

27. Defendant CRUZADO nevertheless handcuffed Plaintiff and searched him.

28. Defendants MATTHEWS and SCHLEYER also participated in the handcuffing and search of Plaintiff.

29. None of the Individual Defendants found any contraband on or near Plaintiff.

30. Shortly after searching Plaintiff, Defendant CRUZADO falsely claimed that he had found a gun on Plaintiff's person.

31. Defendant CRUZADO also falsely claimed that he saw Plaintiff throw a bag of marijuana to the ground.

32. Defendants MATTHEWS and SCHLEYER knew that Defendant CRUZADO's accusations were untrue, as they had watched the entire event unfold.

33. Defendant CRUZADO informed Plaintiff that he was under formal arrest.

34. The Individual Defendants placed Plaintiff in a police vehicle and transported him to the 101st precinct in Far Rockaway, Queens.

35. Defendant MATTHEWS was Defendant CRUZADO's supervisor that night.

36. At the precinct, Defendant MATTHEWS directed Defendant CRUZADO to create various items of paperwork to document the arrest as well as the false allegation that Plaintiff had been in possession of the gun and marijuana.

37. The paperwork included an evidence voucher.

38. An evidence voucher is a printed, property tracking form regularly used by the NYPD.

39. Its purpose is to document where physical items were recovered and to track the location of such evidence.

40. Evidence vouchers are relied on by other members of law enforcement and prosecutors to document the recovery and safekeeping of evidence.

41. Prosecutors regularly rely upon evidence vouchers as a basis to initiate a prosecution, as evidence presented to a grand jury to obtain an indictment, and as evidence of guilt at trial.

42. Defendant CRUZADO created an evidence voucher claiming the recovery from Plaintiff of a .380 semi-automatic Bersa handgun with seven rounds of ammunition, and a plastic bag of marijuana.

43. Defendants MATTHEWS and SCHLEYER had a duty to correct any false or erroneous forms filled out by Defendant CRUZADO before such forms were relied upon by the prosecution to cause harm to Plaintiff.

44. They knew that the property voucher, as well as other forms filled out by Defendant CRUZADO, were false, but did not correct these forms.

45. Indeed, Defendant MATTHEWS supported the false claim of CRUZADO by fabricating the allegation that he had seen Plaintiff throw something to the ground.

46. Defendant CRUZADO filed Requests for Laboratory Examination to have the NYPD laboratory test the marijuana to verify its chemical composition, and to determine the operability of the handgun.

47. However, knowing that Plaintiff had not handled the handgun or the bag of marijuana but that he, Defendant CRUZADO, had, he did not ask the NYPD laboratory to test these items for evidence of fingerprints or DNA.

48. While at the police precinct, Plaintiff was interrogated for several hours by Defendant CRUZADO in the presence of Defendant MATTHEWS.

49. Defendant CRUZADO tried to intimidate and frighten Plaintiff by asking if he had heard about an incident involving an NYPD officer shooting a young man on the subway and telling Plaintiff that he had been that NYPD officer.

50. Defendant CRUZADO also tried to manipulate a false confession from Plaintiff, who obviously was young and scared, by telling him that if he admitted temporary possession of the gun, he would be released and able to go home.

51. As a result of this coercion, Plaintiff made such a false admission.

52. The Individual Defendants forwarded the evidence they had fabricated – the allegation that Plaintiff had possessed marijuana and a loaded firearm, the alleged circumstances, Plaintiff's "confession," and the paperwork they had prepared documenting all these false occurrences – to the prosecutor.

53. These circumstances included a fabricated justification for the initial stop: a claim by Defendants CRUZADO and MATTHEWS that they had seen Plaintiff and his friend walking down the street with bandanas or masks covering up the lower halves of their faces, which caused them to suspect the two civilians of being robbers.

54. However, no bandanas or masks were ever recovered or vouchered, as the allegation was a lie.

55. There was no evidence, apart from the Individual Defendants' false statements, that either Plaintiff or his friend wore a bandana or a mask that night.

56. Based upon the Individual Defendants' forwarding of false evidence, the District Attorney's Office decided to pursue charges against Plaintiff.

57. Defendant CRUZADO formally initiated the criminal prosecution by signing, under oath, a false Criminal Court complaint accusing Plaintiff of criminal possession of a weapon in the second degree and criminal possession of marijuana in the fifth degree.

58. Based entirely upon the false "evidence" that the Individual Defendants had fabricated, Plaintiff was thereafter indicted by a grand jury.

**B.** **Plaintiff's Trial and Conviction**

59. Plaintiff was tried before a judge sitting without a jury beginning March 10, 2010.

60. Defendants CRUZADO and MATTHEWS testified at this trial to the false stories they had manufactured at the time of Plaintiff's arrest.

61. Not only did these Defendants produce no physical evidence – no DNA evidence, no fingerprint evidence, no mask and no bandana – to corroborate their false stories, but they also were unable to produce their memo book entries concerning Plaintiff's arrest.

62. Based entirely upon the false evidence that the Individual Defendants had manufactured, Plaintiff was convicted on March 16, 2010.

**C.** **The Reversal of Plaintiff's Conviction and Dismissal of the Indictment**

63. On July 13, 2016, Plaintiff's conviction was reversed on appeal by the Appellate Division, Second Judicial Department.

64. The court found that the verdict was against the weight of the evidence.

65. The court dismissed the indictment.

66. In its decision, the Second Department discredited Defendant CRUZADO, the arresting officer.

67. Among other things, it relied on the absence of physical evidence that should have existed had he been telling the truth.

68. In addition, the court relied on another case where it had discredited Cruzado for apparent lying: its decision in *People v. Battle*, 116 A.D.3d 782, 983 N.Y.S.2d 314 (2d Dep't 2014).

69. In *Battle,* the same court also reversed a gun possession conviction, and dismissed the indictment, after discrediting CRUZADO's manufactured claim that he had seen the defendant throw the gun underneath a car, where CRUZADO found it.

70. Much like in Plaintiff's case, CRUZADO did not have the firearm in *Battle* tested for fingerprints or DNA, and he could not produce his memo book.

71. Additionally, a defense witness testified at Battle's trial that she had seen a different man throw the gun underneath the car, and had told the police that the defendant, Battle, was "not the guy."

72. Upon information and belief, Defendant CRUZADO has been involved in manufacturing false evidence in other cases as well.

73. On June 15, 2007, Darious Peterson was returning from purchasing diapers for his nephew when his car was struck by a vehicle driven by plainclothes officers. Smoke started coming out of his car and he exited the vehicle, only to have a number of officers, including Defendant CRUZADO, run up to him and assault him with hits and kicks. He was taken to the hospital, where he spent three days handcuffed to the bed until a bedside arraignment was conducted. Defendant CRUZADO, along with the other police

defendants, caused him to be falsely charged with, among other things, criminal possession of a controlled substance, and criminal possession of a weapon. The grand jury declined to indict on any of the charges brought, and all charges were dismissed. A civil judgment on Mr. Peterson's behalf was entered in 2009. *See Peterson v. New York City, et al.*, 08-cv-04397 (LAK)(DFE) (S.D.N.Y. 2008).

74. On September 5, 2007, Defendant CRUZADO falsely accused Kaleek Cross of weapons possession, and manufactured false reports containing this allegation, after Cross walked into the vicinity of a vehicle search CRUZADO was conducting. After a jury fully acquitted Cross, he obtained a civil settlement. *See Cross v. City of New York, et al.*, 08-cv-03412 (JG)(RLM) (E.D.N.Y. 2008).

75. On April 25, 2012, CRUZADO falsely accused Lyla Smith, who was visibly pregnant, of possession of a controlled substance, drug paraphernalia, and ammunition, and threatened her with jail, when she wouldn't cooperate to his satisfaction against her boyfriend, whose apartment had just been raided. Ultimately, the Queens County D.A.'s Office dismissed all charges against Ms. Smith, and she recovered a civil settlement. *See Smith v. City of New York, et al.*, 12-cv-07132 (GBD) (S.D.N.Y. 2012).

76. On January 9, 2013, Defendant CRUZADO, along with other police defendants, wrongfully arrested Pamela Brown and falsely accused her of possessing illegal substances. The District Attorney declined to bring charges against her, and she later obtained a civil settlement. *See Brown v. City of New York, et al.*, 15-cv-05876 (AMD)(MDG) (E.D.N.Y. 2015).

**D.     Plaintiff's Damages and Injuries**

77. Plaintiff's injuries and damages include, but are not limited to, his:

    a.    Wrongful arrest, prosecution, and conviction for criminal possession of a weapon and marijuana;

    b.    Three and one-half years of incarceration followed by two and one-half years of post-release supervision;

    c.    Loss of the services, society, companionship, and consortium of his family and friends, including the loss of his relationship with his girlfriend and his inability to attend his grandmother's funeral;

    d.    Past and future mental and emotional suffering; and

    e.    Past and future loss or diminution of employment earnings in an amount to be determined.

## **FIRST CAUSE OF ACTION**

### **(Malicious Prosecution Under State Law; All Defendants)**

78. Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1 through 77 of this Complaint.

79. At all relevant times, the Individual Defendants were acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

80. Defendants CRUZADO, MATTHEWS, and SCHLEYER, individually and acting in concert with each other, initiated, continued, or caused the initiation or continuation of, criminal proceedings against Plaintiff.

81. The criminal proceedings terminated in Plaintiff's favor.

82. There was no probable cause for the commencement or the continuation of the criminal proceedings.

83. Defendants CRUZADO, MATTHEWS, and SCHLEYER acted with actual malice.

84. The Individual Defendants are liable for their conduct.

85. Defendant THE CITY OF NEW YORK is liable under the principle of *respondeat superior*.

## SECOND CAUSE OF ACTION

### (42 U.S.C. § 1983; Malicious Prosecution Under Federal Law Under the Fourth, Fifth, and Fourteenth Amendments; the Individual Defendants)

86. Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1 through 85 of this Complaint.

87. The Individual Defendants knowingly and willfully initiated, or caused the initiation and continuation of, Plaintiff's criminal prosecution, thereby causing him to lose his liberty.

88. They did so with malice, and without probable cause.

89. The prosecution was resolved in favor of Plaintiff.

90. The Individual Defendants' conduct was outrageous and shocking to the conscience.

91. The Individual Defendants' conduct violated Plaintiff's right to be free of unreasonable search and seizure pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, as well as his right to substantive and procedural due process pursuant to the Fifth and Fourteenth Amendments.

92. By virtue of the foregoing, the Individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for compensatory and punitive damages.

## **THIRD CAUSE OF ACTION**

**(42 U.S.C. § 1983; Denial of Due Process and a Fair Trial
Under the Fifth, Sixth and Fourteenth Amendments; the
Individual Defendants)**

93. Plaintiff repeats and realleges each and every allegation contained in ¶¶ 1 through 92 of this Complaint.

94. The Individual Defendants, individually and in concert, deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, manufactured false evidence against Plaintiff.

95. The false evidence was material to Plaintiff's prosecution in that it was the only evidence of guilt and it was reasonably likely to influence a jury to convict Plaintiff.

96. The Individual Defendants forwarded, or caused to be forwarded, this false evidence to the District Attorney's Office.

97. They knew that the fabricated evidence was likely to influence the prosecutor in deciding whether to prosecute, the court in deciding the conditions of bail and any restrictions upon Plaintiff's liberty, the grand jury in deciding whether to indict, and a jury at trial in deciding whether to convict.

98. In fact, the fabricated evidence was a substantial and proximate cause of Plaintiff's prosecution, indictment, conviction, deprivation of liberty, and all other damages.

99. Accordingly, the Individual Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983 for violating his constitutional right to procedural and substantive due process and to a fair trial pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## FOURTH CAUSE OF ACTION

**(Negligent Hiring, Training and Supervision Under State Law;
Defendant THE CITY OF NEW YORK)**

100. Plaintiff repeats and realleges each and every allegation contained in ¶¶ 1 through 99 of this Complaint.

101. By virtue of the foregoing, defendant THE CITY OF NEW YORK is liable to plaintiff because of its negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD With regard to their aforementioned duties.

## DAMAGES DEMAND

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a. For compensatory damages of not less than $10 million;

b. For punitive damages against the Individual Defendants of not less than $5 million;

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 2, 2017

                              LAW OFFICES OF JOEL B. RUDIN, P.C.

                              By: _____/s/_____
                              Joel B. Rudin, Esq.
                              Terri Rosenblatt, Esq.
                              Haran Tae, Esq.
                              152 West 57th Street, 8th Floor
                              New York, New York 10019
                              Tel:  (212) 752-7600
                              Fax: (212) 980-2968